## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

SONDIA BELL,

          Appellant/Petitioner,

v.

CITY OF TULSA,

          Appellees/Respondent.

Case No. 23-5111

---

## RESPONSE BRIEF ON BEHALF OF APPELLEE CITY OF TULSA

On Appeal from the United States District Court
For The Northern District of Oklahoma
The Honorable James O. Browning, United States District Judge
District Court Case No. 21-CV-061-JB-CDL

---

**RESPECTFULLY SUBMITTED**,


KRISTINA L. GRAY, OBA #21685
Litigation Division Manager
T. Michelle McGrew, OBA #20279
Senior Assistant City Attorney
175 E. 2nd Street, Suite 685
Tulsa, Oklahoma 74103-3205
(918) 596-7717 (Telephone)
(918) 596-9700 (Facsimile)
kgray@cityoftulsa.org
mmcgrew@cityoftulsa.org

**June 21, 2024**
**Oral Argument Not Requested**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..................................................................iii-vi

**PRIOR OR RELATED APPEALS** ........................................................1

**STATEMENT OF THE ISSUES**............................................................1

**STATEMENT OF THE CASE/STATEMENT OF FACTS**............................1

    **A. Background** ..............................................................................1

    **B. Statement of Facts** ..................................................................2

    **C. Procedural History** .................................................................16

**SUMMARY OF THE ARGUMENT** ....................................................17

**ARGUMENT AND AUTHORITIES**.....................................................18

    **I. The District Court Correctly Found that Plaintiff Could Not
Establish Pretext On Her Disparate Treatment Claims.**......................18

        **A. Plaintiff Cannot Create A Fact Issue By Disputing
Credibility** ..............................................................................22

        **B. Ms. Bell's Claims That Her Discipline Was "Padded"
Are Unsupported By The Record** ................................................24

i

**C. Ms. Bell's Argument That She Was Treated Differently From "Similarly Situated" Employees Is Not Support By The Evidence**...................................................................**26**

**II. Plaintiff's Retaliation Claims Were Properly Dismissed** ...................**29**

    **A. Plaintiff Failed To Establish That The City's First Reason Was Pretextual** ...................................................................**31**

    **B. Plaintiff Failed To Establish That The City's Second Reason Was Pretextual** .......................................................**32**

    **C. Even If Plaintiff Could Establish Pretextual Reasons Related To The City's Third Reason, It Is Insufficient To Overcome Summary Judgment.**...................................................**33**

**III. The City Properly Raised A Challenge To Plaintiff's Disability Claims In Its Summary Judgment Motion** ........................................**34**

**IV. The District Court Did Not Err In Granting Summary Judgment On Plaintiff's Disability Association Claim** ...............................................**39**

**CONCLUSION**....................................................................................**44**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145–46 (10th Cir. 2008)........................................................................................19

*Anderson v. Coors Brewing Co*., 181 F.3d 1171, 1179 (10th Cir. 1999)...............22

*Aramburu v. Boeing Co*., 112 F.3d 1398, 1404 (10th Cir. 1997)...........................26

*Beaird v. Seagate Technology, Inc*., 145 F.3d 1159, 1164 (10th Cir. 1998)...........38

*Bekkem v. Wilkie*, 915 F.3d 1258, 1271 (10th Cir. 2019).......................................29

*Bertsch v. Overstock.com*, 684 F.3d 1023, 1029 (10th Cir. 2012) .................. 20, 21

*Boutsis v. Home Depot*, 371 Fed.Appx. 142 (2nd Cir. March 29, 2010).................22

*Brainerd v. Schlumberger Tech. Corp*., 589 F. App'x at 412 ................................20

*Burke–Fowler v. Orange Cnty*., 447 F.3d 1319, 1323 (11th Cir.2006) .................28

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. at 57...................................43

*Cooper v. Wal-Mart Stores, Inc*., 296 F. App'x 686, 693 (10th Cir. 2008)...........21

*Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1235 (10th Cir. 2009)...............................................................................................37

*Crowe v. ADT Sec. Servs., Inc*., 649 F.3d 1189, 1198 (10th Cir. 2011).................32

*Den Hartog v. Wasatch Acad.,* 129 F.3d 1076, 1084 (10th Cir. 1997)............ 35, 40

*DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 969 n.18 (10th Cir. 2017).....39

iii

*E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1316 n.4 (10th Cir. 1992) ............... 19, 20

*Fed. Ins. Co. v. Tri-State Ins. Co.*, 157 F.3d 800, 805 (10th Cir. 1998) ................... 37

*Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1058 (10th Cir. 2020) ................................................................................................. 20, 21

*Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005) .................................. 38

*Haynes v. Level 3 Communications, LLC*, 456 F3d. 1215 (10th Cir. 2006) ........... 43

*In re Gold Res. Sec. Litig.*, 776 F.3d 1103, 1119 (10th Cir. 2015) .......................... 38

*Jaramillo v. Colorado Jud. Dep't*, 427 F.3d at 1310 ............................................... 33

*Jencks v. Modern Woodmen of Am.*, 479 F.3d 1261, 1267 (10th Cir. 2007) ..........21
*Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225–26, 1230 (10th Cir. 2000) ................................................................................................. 19, 26

*Larimer v. Int'l Bus. Machs. Corp.*, 370 F.3d 698, 700 (7th Cir. 2004) ................ 40

*Lester v. City of Lafayette*, No. 13-CV-01997, 2015 WL 881677, at *3-4 (D. Colo. February 27, 2015) .................................................................................. 42

*Liberty Lobby, Inc.*, 477 U.S. at 248 ....................................................................... 23

*Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018) ..................................... 20

*Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 885 (S.D. Tex. 2010) ........................ 27

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. at 586-587 ........ 23

*Mazzella v. RCA Global Communications, Inc.*, 642 F.Supp. 1531, 1547 (S.D.N.Y.1986), aff'd, 814 F.2d 653 (2d Cir.1987) ............................................. 26

*McDonnell Douglas v. Green,* 411 U.S. 792, 93 S. Ct. 1817,
36 L.Ed.2d 668 (1973) ........................................................................ 18, 19, 39, 40

*McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) ..........................27

*Morgan v. Hilti, Inc.*, 108 F.3d at 1323 ...................................................34

*Otten v. BNSF Ry. Co.*, 22-8025, 2023 WL 1948626, at *4
(10th Cir. Feb. 13, 2023) ............................................................... 37, 38, 39

*Payan v. United Parcel Serv.*, 905 F.3d 1162, 1172 (10th Cir. 2018).....................43

*Perry v. Woodward*, 199 F.3d 1126, 1135 (10th Cir. 1999)...................................19

*Rivera v. City & Cnty. of Denver*, 365 F.3d 912, at 924-25 (10th Cir. 2004) .........24

*Rodriguez v. Brown*, No. 21-1124, 2022 WL 3453401, at *15
(10th Cir. Aug. 18, 2022) .........................................................................34

*Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 760 (5th Cir. 1996)..............43

*Russell v. Acme-Evans Co.*, 51 F.3d 64, 69 (7th Cir. 1995) ...................................33

*Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004)........................19

*Sprague v. Thorn Ams., Inc.*, 129 F.3d 1201, 1355, 1363 (10th Cir. 1997) ...........21

*Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 488 (6th Cir. 2011).............44

*Stinson v. Pub. Serv. Tel. Co.*, 486 Fed. Appx. 8, 10 (11th Cir. 2012)...................28

*Swackhammer v.Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1170
(10th Cir. 2007) ............................................................................... 25, 26

*Trujillo v. PacifiCorp*, 524 F.3d at 1155.................................................... 35, 36, 40

*Tyler v. RE/MAX Mountain States, Inc*., 232 F.3d 808, 814 (10th Cir. 2000) ........31

*Watts v. Norman*, 270 F.3d 1288, 1295 (10th Cir. 2001) .......................................25

*Wilson v. Utica Park Clinic, Inc*., No. 95–5060, 76 F.3d 394, 1996 WL 50462
  (10th Cir. Feb.7, 1996)...........................................................................................26

*York v. City of Las Cruces*, 523 F.3d 1205, 1212-1213 (10th Cir. 2008)................37

*Zisumbo v. Ogden Reg'l Med. Ctr*., 801 F.3d 1185, 1200 (10th Cir. 2015) ............19

**Statutes**
42 U.S.C. § 1981 ............................................................................. 1, 16, 18

42 U.S.C. §§ 2000e-2000e17 (Title VII) ................................... 1, 16, 18, 19, 20, 34

42 U.S.C. § 2000e–2(a)(1)......................................................................................18

42 U.S.C. § 12101 (ADA) ......................................................... 1, 16, 33, 34, 35, 43

Health Insurance Portability and Accountability Act. Pub. L. No. 104-191,
§ 264, 110 Stat.1936 (HIPAA) ....................................................................... 14, 31

**Rules**
Fed. R. Civ. P. 56(c).................................................................................................2

## PRIOR OR RELATED APPEALS

The Appellee represents that there are no prior or related appeals before this Court or other Federal District Courts.

## STATEMENT OF THE ISSUES

1.   Whether the district court erred in granting summary judgment to the City of Tulsa on the Plaintiff's claims of race discrimination brought under Title VII and 42 U.S.C. § 1981.

2.   Whether the district court erred in granting summary judgment to the City of Tulsa on Plaintiff's claims of retaliation brought under Title VII, 42 U.S.C. § 1981, and the Americans with Disabilities Act.

3.   Whether the district court erred in granting summary judgment to the City of Tulsa on Plaintiff's claims of disability association brought under the Americans with Disabilities Act.

## STATEMENT OF THE CASE/STATEMENT OF FACTS

### A. Background

Sondia Bell's employment with the City of Tulsa was terminated after a long pattern of Ms. Bell being insubordinate to her supervisors, failing to cooperate with the Human Resources department during investigations, being rude and disrespectful to other employees, and being untruthful. Ms. Bell was given numerous opportunities to correct her behavior to no avail, which resulted in her termination of her employment with the City. Ms. Bell brought suit against the City alleging discrimination and retaliation under Title VII, 42 U.S.C. §1981, and the American's

With Disabilities Act. In a 133-page opinion, the trial court granted the City's Motion for Summary Judgment which is the basis of the present appeal.

### B. Statement of Facts

Appellant/Plaintiff Sondia Bell is an African American female who began employment with the City of Tulsa in December of 2014. [App. Vol. 1, p. A60]. Ms. Bell's employment with the City of Tulsa was terminated in December of 2020. [App. Vol. 3, p. 508] At the time of the termination of her employment, she held the position of a Senior IT Business Administrator in the Information Technology ("IT") Department. [App, Vol. 1, p. A66] Within the IT Department, Ms. Bell's immediate supervisor was Chris Berg. He reported directly to Michael Dellinger, the head of IT and the City's Chief Information Officer. [App. Vol. 1, p. A95[1], ¶¶ 2-3; Vol. 1, p. A115-A116, ¶6]

On January 8, 2019, Ms. Bell sent an email to Mr. Berg making a "formal request to work remotely from home." [App. Vol. 1, p. A148-149] Ms. Bell's email states that she has "been finding it increasingly difficult to address some family issues (Due to my son being on bed-rest for his ACL) while I am working a full-time schedule." *Id*. She also stated she had a 45-minute commute into the office. *Id*.

---

[1] Plaintiff chose not to take any depositions during the pendency of the litigation. Chris Berg and Michael Dellinger submitted affidavits which were relied upon in Defendant's MSJ as allowed for by Fed. R. Civ. P. 56(c).

The City of Tulsa had in effect at that time (and is still in effect) a policy addressing telecommuting. The policy states that "telecommuting is not appropriate for all positions, and no employee or job category is entitled to or guaranteed the opportunity to telecommute, except for those hired into designated positions." [App. Vol. 2, p. A275-279 (PP 826.4)] The policy states that "telecommuting is a management option and is only available with the approval of an employee's direct supervisor, Department Head, Personnel Director, and IT Security or as otherwise approved in accordance with this policy." [App. Vol. 2, p. A276 (PP 826.43)]

The City's policy further notes that telecommuting is not a substitute for dependent care or childcare. The policy requires that telecommuting employees "make dependent care and childcare arrangements during the work hours outlined in the Telecommuting Acknowledgement." [App. Vol. 2, p. A277 (PP 826.7)]

In July 2019, after Ms. Bell returned from maternity leave, Mr. Berg e-mailed Ms. Bell denying her request to telework. The email made clear that "due to the small number of staff I have available in the IT Administration Services Section to adequately cover all of the essential services we provide to our customers" he was not allowing telecommuting. [App. Vol. 1, p. A148] Mr. Berg explained that "many of those services require daily on-site presence by all of our staff to ensure coverage during absences from the work site resulting from vacation and sick leave as well as training, meetings and other offsite job-related activities." [App. Vol. 1, p. A148]

3

Ms. Bell appealed Mr. Berg's decision to Michael Dellinger, the Department Head. Mr. Dellinger upheld Mr. Berg's decision. [App. Vol. 1, p. A146] Ms. Bell then filed an internal grievance which was eventually denied by the City. [App. Vol. 2, p. A292]

Because of the nature of the job duties covered by the staff at the IT Administrative Services Section, Chris Berg made the decision that no one under his supervision would be allowed to telecommute except for exceptional circumstances and even then, only temporarily. [App. Vol. I, p. A96 at ¶8] For example, most of the staff in this section were allowed to work remotely starting in March of 2020 because of the safety concerns presented by the COVID-19 pandemic. Four of the six employees in Ms. Bell's work group, including Ms. Bell, were approved to work from home beginning March 26, 2020, until June 1, 2020, when City employees, including those in IT, were to report back to in-person work. [App. Vol. I, p. A96 at ¶8; App. Vol. 2, p. A294]

Mr. Berg was only able to allow staff to work from home during the pandemic because of the willingness of two employees who continued to report on site each day to "maintain the services of this work group during this unprecedented time." [App. Vol. 1, p. A96-97, ¶9] That solution would not have been sustainable over the long term and some essential services during that time were delayed until all staff reported back to work on June 1, 2020. *Id*.

4

At the district court and again here on appeal, Ms. Bell argues that two other employees were allowed to telecommute when she was not: Jan Buster and Paula Stickelber. [App. Vol. 1, p. A69-A75]

Ms. Stickelber was approved by her supervisor to telecommute in 2019. At the time, her job title was Systems Engineer III in the Service Center. [App. Vol. 1, p. A117, ¶10] Her direct supervisor was Glen Breske, IT Manager – Operations. [App. Vol. 1, p. A117, ¶10] "Paula's job duties and title were different from Sondia's and she worked in a different division under a different supervisor who felt Paula could successfully complete her job remotely." *Id*. at ¶10. It is undisputed that Ms. Stickelber did not report to Mr. Berg. [App. Vol. 1, p. A71]

Ms. Buster was a Systems Business Analyst and reported directly to Mark Temple, the Development Services Manager. [App. Vol. 1, p. A117, ¶11] "Jan's job duties and title were different from Sondia's and she worked in a different division under a different supervisor who felt Jan could successfully complete her job remotely." Id. at ¶11. Jan's last work from home agreement ended in April of 2022. *Id*. at ¶11.

Ms. Bell made another request to telecommute on June 1, 2020, which was denied for the same reasons as her initial request. [App. Vol. 1, A96-A97, ¶¶8-9; Vol. 2, p. A297, ¶13]

5

The record is clear, and it is undisputed, that at the times Ms. Bell requested to telecommute and was denied, Mr. Berg did not allow <u>any</u> of his employees to telecommute. [App. Vol. 1, p. A75, A78; Vol. 2, p. A292; Vol. 1, p. A96 ¶8] <u>Importantly, Ms. Bell does not know of anyone who worked for Mr. Berg who was allowed to telecommute when she was not</u>. [App. Vol. 1, p. A75 – A78]

After her request to telecommute was denied, both Mr. Dellinger and Mr. Berg noticed a change in the way Ms. Bell interacted with her co-workers and other City of Tulsa employees. [App. Vol. 1, p. A98, ¶13; Vol. 1, p. A117, ¶12]

Ms. Bell began bringing her two children with her to the office without management approval. [App. Vol. 1, p. A98, ¶14] On July 27, 2019(correct year?), Mr. Berg sent an email to the IT Administration Services section to remind them about the City's policies regarding bringing children into the workplace. [App. Vol. 2, p. A274 (PP 825); Vol. 2, p. A306]

Ms. Bell then began working unusual hours without approval including late nights and weekends. [App. Vol. 1, p. A98, ¶16] Ms. Bell had an hourly position and thus was subject to hour and overtime restrictions. [App. Vol. 1, p. A117-118, ¶13] It was brought to Mr. Dellinger's attention that Ms. Bell was flexing her time without prior authorization as is required by City of Tulsa policies and procedures. [App. Vol. 1, p. A118, ¶14; Vol. 2, p. A170-172 (PP 221)]

Mr. Dellinger scheduled a meeting with Ms. Bell and Mr. Berg to take place October 4, 2019, at 4:00 p.m. to discuss Ms. Bell's work hours and City policies with respect to flexing time. [App. Vol. 1, p. A98-99, ¶17; Vol. 1, p. A118, ¶15; Vol. 2, p. A357] It is undisputed that Ms. Bell did not attend the meeting. [App. Vol. 1, p. A88] Instead, she clocked out at 3:38pm for the day instead of her normal ending time of 5:30pm. [App. Vol. 1, p. A98-99, ¶17; Vol. 1, p. A118 ¶15; Vol. 2, p. A354].

The meeting between Mr. Dellinger, Mr. Berg and Ms. Bell eventually occurred on October 8, 2019, at which time Ms. Bell was reminded of the City policies and procedures about flex time and work schedules. [App. Vol. 1, p. A118, ¶16; Vol. 1, p. A83-84]

Despite being reminded of the City policy, on Wednesday October 16, 2019, Ms. Bell worked an unauthorized 10-hour shift. [App. Vol. 1, p. A99, ¶20; Vol. 2, p. A355] At approximately 5:00 p.m. on October 17, 2019, Mr. Berg told Ms. Bell she needed to clock out for the day and go home since she had worked an extra two (2) hours the day before. [App. Vol. 1, p. A99, ¶21; Vol. 2, p. A359; Vol. 1, p. A90-A91] *Ms. Bell did not clock out.* [App. Vol. 1, p. A99-A100, ¶¶21-22] Mr. Berg returned to his office and at 5:07 p.m. sent an email to Ms. Bell stating "[d]ue to the 2 hours you worked over your shift on 10/16/19, I am directing you to punch out of Kronos immediately upon receipt of this email and leave work for the day." [App. Vol. 1, p. A99-A100, ¶¶21-22; Vol. 2, p. A359]

7

Ms. Bell continued to refuse to leave so Mr. Berg called security to escort her out. [App, Vol. 1, p. A100, ¶22] She continued to work until 5:30 p.m. and left before City security arrived. *Id*.

Then again on October 22, 2019, Ms. Bell requested to work until 6:00 p.m. Mr. Berg denied the request because she had not obtained pre-approval. [App. Vol. 1, p. A100, ¶23; Vol. 2, p. A360] When Ms. Bell was told to clock out at 5:30 p.m., her regular time, she again refused and worked until 6:00 p.m. [App. Vol. 2, p. A355; Vol. 1, p. A100, ¶23] When Ms. Bell properly and timely submitted her request to flex her time, her requests were approved. [App. Vol. 2, p. A393-A409]

Ms. Bell did not present any evidence in this lawsuit that anyone who worked for Mr. Berg was treated any different than her with respect to flex time approvals. [App. Vol. 1, p. A79-A81; Vol. 2, p. A410-A413]

On November 18, 2019, Ms. Bell was given notice that a Pre-Termination Hearing would take place on November 21, 2019, to address violations of City Work Rule 1 (honesty and loyalty); Work Rule 6 (attendance and punctuality); and Work Rule 7, (respect for authority). [App. Vol. 2, p. A414] At the hearing, Ms. Bell's failure to attend the October 4 meeting with Mr. Dellinger and her continued flexing of her schedule without supervisor approval were addressed. *Id*.

Another issue addressed at the hearing was Ms. Bell's failure to cooperate with Human Resources during their investigation into a disagreement Ms. Bell had with her co-worker, Summer Caughron. [App. Vol. 2, p. A414]

The building in which Ms. Caughron and Ms. Bell worked in is an old school building which had been converted into office space and the City's radio shop/warehouse. [App. Vol. 1, p. A100, ¶27; Vol. 2, p. A295, ¶4] When the Admin. Services group moved out to that building in 2017, the employees chose their offices. [App. Vol. 2, p. A295, ¶4 – 5; Vol. 1, p. A100, ¶27] Ms. Caughron's office was formerly a school nurse's office and had a bathroom and sink in the office.

Ms. Bell would often use the restroom in Ms. Caughron's office instead of walking a short distance down the hall to the public restroom. [App. Vol. 1, p. A101, ¶29; Vol. 2, p. A295-296, ¶6] Upon leaving work on Friday August 30, 2019, Ms. Caughron locked the door to her office. When Ms. Bell returned to the office on September 4, 2019, she confronted Ms. Caughron about the locked door. Voices were raised and Mr. Berg was notified of the argument. Mr. Berg notified HR and asked for all employees to provide written statements of what happened. [App. Vol. 1, p. A101, ¶29 – 30; Vol. 2, p. A296, ¶7 – 8] The other employees provided statements the same day. Ms. Bell did not. [App. Vol. 2, p. A418; Vol. 1, p. A101, ¶31] Ms. Bell and Ms. Caughron both filed complaints against the other regarding the argument and HR investigated. [App. Vol. 1, p. A101, ¶33]

During the HR investigation, it was learned that Ms. Bell had recorded at least a portion of the argument with Ms. Caughron. Despite repeated requests, Ms. Bell never provided the recording to HR so they could thoroughly investigate Ms. Bell's discrimination claim. [App. Vol. 2, p. A337-A341; App. Vol. 1, p. A87]

On September 4, 2019, after the argument over the restroom, Mr. Berg sent an email advising that "a policy regarding use of restrooms, located within a single-occupancy office, will need to be developed." The email further stated that "as such, until that time, use by anyone of the restroom in Summer's office is suspended until further notice." [App. Vol. 2, p. A343] During this time, all employees, including Ms. Caughron, were excluded from using the restroom in her office. [App. Vol. 2, p. A296, ¶9; App. Vol. 1, p. A101, ¶32]

On October 2, 2019, Ms. Bell sent an email to members of the HR department, the Mayor, the Deputy Mayor and others claiming she was the only person excluded from the bathroom in Ms. Caughron's office. In her email she appears to quote from Mr. Berg's September 4 email but changes the language from the original email. [App. Vol. 2, p. A342 compare with Vol. 2, p. A34]

Ms. Bell's Pre-Termination hearing was held November 21, 2019, and then continued to December 2, 2019, to complete the presentation of evidence. The hearing addressed all these issues. Clayton Edwards, the Director of Water and Sewer was the hearing officer over the hearing. At the conclusion of the hearings,

Mr. Edwards wrote an email finding that Ms. Bell violated Work Rule 1 (honesty and loyalty) and Work Rule 7 (respect for authority). [App. Vol. 2, p. A425]. The hearing officer did not find a violation of Work Rule 6 (attendance and punctuality). *Id*. Mr. Edwards recommended a 5-day suspension be given in light of the seriousness of the actions and the "numerous examples of impeding an investigation and not following her supervisor's directives." *Id*. Mr. Dellinger, as Department Head, agreed and Ms. Bell received a 5-day suspension. [App. Vol. 1, p. A119, ¶19; App. Vol. 2, p. A426]

When Ms. Bell returned from work after her suspension, Mr. Berg provided her a letter, dated December 11, 2019, wherein he made some points of clarification and established clear expectations and guidelines moving forward after the hearing. [App. Vol. 2, p. A427; App. Vol. 1, p. A101, ¶41] In part, the letter set out the following expectations of Ms. Bell: [App. Vol. 2, p. A427]

- Work your approved work schedule and request prior approval with any variations (flexing);
- Do not work overtime without prior approval;
- Do not be insubordinate and improve your attitude and work relationships with me and your co-workers;
- Do not make false or inflammatory accusations that cause drama and disrupt our work environment;
- Do not record conversations with me and others without prior consent;
- Observe the chain of command and consult me for questions or concerns on work and policy issues unless it is appropriate under policy to discuss with Michael first.

11

Ms. Bell appealed her suspension to an independent commission comprised of five community members, not City of Tulsa employees, who found the City had just cause to discipline Ms. Bell and the five-day suspension was upheld. [App. Vol. 3, p. A435]

In August 2020, Ms. Bell received notice that another pre-termination hearing was to be conducted for additional violations of Work Rule 7 (respect for authority). [App. Vol. 3, p. A437] A hearing was held with Mr. Edwards again serving as the hearing officer. [App. Vol. 3, p. A466] The hearing addressed instances on March 13, 2020, and June 8, 2020, where Ms. Bell again ignored direct orders of her supervisor regarding entering her time and taking leave. [App. Vol. 3, p. A437]

As an example, on June 8, 2020, Ms. Bell sent an e-mail that she would be in late. With no further communication, she failed to arrive to work until 1:43 p.m. Mr. Berg advised her that she had not been previously approved to flex her time for the day, so she needed to clock out at her regular time and submit leave. [App. Vol. 3, p. A460-A463] Ms. Bell ignored these instructions and refused to stop working. She did not punch out until 5:20 p.m., working an unauthorized alternate schedule against the instructions of her supervisor. [App. Vol. 3, p. A460-A463]

At the conclusion of this hearing, Mr. Edwards recommended that Ms. Bell's employment be terminated based on her pattern of insubordinate behavior. [App. Vol. 3, p. A466, ¶7; Vol. 1, p. A119, ¶21] Mr. Dellinger decided to allow Ms. Bell

one more chance to change her behavior and instead, gave her a two-week suspension. [App. Vol. 1, p. A119, ¶21; Vol. 3, p. A468]

Mr. Dellinger prepared a letter to Ms. Bell again making clear the expectations of her going forward with the performance of her job. [App. Vol. 3, p. A485-A486] Mr. Dellinger stated, "if you fail or refuse to follow these instructions, disciplinary action may result up to and including termination." [App. Vol. 3, p. A486]

In July 2020 Ms. Bell requested to use expanded FMLA leave to care for her children because of school closures related to COVID. HR employees needed clarification on the specifics of the leave requested by Ms. Bell, so they scheduled a call with her to discuss. [App. Vol. 3, p. A472-A475] On September 25, 2020, a telephone call was conducted between HR Analyst Tina McIntosh, HR Manager Joyce Powell and Ms. Bell. [App. Vol. 3, p. A487; A528] The telephone call was recorded by the HR personnel, and they advised Ms. Bell of this upfront. The call was 53 minutes in length. As can be heard by listening to the recording, Ms. Bell becomes frustrated with the questions and tells Ms. Powell she is not going to answer the questions asked. [App. Vol. 3, p. A487; A528]

On October 12, 2020, Ms. Bell sent an email to Ms. Powell but also sent her response to Deputy City Attorney Jean Ann Hudson, Mayor G.T. Bynum and Personnel Director Erica Felix-Warwick. Among other things, Ms. Bell's email alleges [App. Vol. 3, p. A478]:

> I was told by Joyce Powell via a recorded telephone call on 9/25/2020, my child is level 3. Joyce then explained to me the definition of a Level 3 and sent me the link to access the Tulsa Public Schools website showing where I can find information regarding Level 3. I found this to be yet another violation of the HIPAA Laws by Joyce Powell. How does Joyce Powell know what level my child is on? Joyce did not read Level 1,2,4, only read Level 3 as if she has access to my child's file. I never informed her of my son, Jacob's level. So how can Joyce Powell tell me what Level 3 is within TPS when she could not even tell me what full-time hours are within Tulsa Public schools. There is another behavior of harassment and violation of HIPAA Laws with my child.

A review of the telephone call between Ms. Bell, Ms. McIntosh and Ms. Powell shows this to be an untruthful account of what happened during the call. [Vol. 3, p. A489; A528] On November 17, 2020, Ms. Powell responded via e-mail to Ms. Bell and referred the issue to the IT Department for their review. [App. Vol. 3, p. A480-A481].

On November 23, 2020, Ms. Bell was again given notice of a pre-termination hearing to take place December 2, 2020. [App. Vol. 3, p. A469] At the hearing, Mr. Edwards was again the hearing officer and heard evidence regarding Sondia's interactions with Human Resources employees as well as the email sent by Ms. Bell afterwards. [App. Vol. 3, p. A507] After the hearing, Mr. Edwards recommended Ms. Bell's employment be terminated considering her "continued unprofessional behavior and her disrespectful, condescending, and threatening actions." [App. Vol.

14

3, p. A507] Mr. Dellinger agreed with the recommendation and terminated her employment effective December 3, 2020. [App. Vol. 3, p. A508]

Ms. Bell again appealed the termination decision to the Civil Service Commission. After a February 11, 2021, hearing where both Ms. Bell and the City presented testimony and evidence, the Commission unanimously found that the City had just cause for the termination. [App. Vol. 3, p. A509]

During this litigation, Ms. Bell has made claims regarding her health insurance being "cancelled". This is not the case. During the City's health insurance open enrollment for the insurance period beginning January 1, 2020, thirty-two (32) employees, including Ms. Bell, failed to submit their final enrollment selections through the online system and thus were not enrolled for coverage. [App. Vol. 3, p. A512, ¶4 – 5] The 32 employees affected were from different departments and were a mix of genders, races and backgrounds. *Id*. at ¶5.

On January 16, 2020, a benefits analyst with the City emailed Ms. Bell to let her know the issue and offered a one-time exception to log back in and complete enrollment. [App. Vol. 3, p. A512, ¶6; App. Vol. 3, p. A517] Ms. Bell completed this process, and her benefits were reinstated on January 27, 2020, and backdated for an effective date of January 1, 2020. Ms. Bell did not experience any lapse in coverage. [App. Vol. 3, p. A512, ¶7; App. Vol. 3, p. A526]

**C. Procedural History**

On February 16, 2021, Ms. Bell filed a Complaint in the Northern District of Oklahoma, Case No. 21-CV-00061-JB-CDL, against the City of Tulsa. [App. Vol. 1, p. A9-A17]. Bell asserted claims of discrimination and retaliation under 42 U.S.C. §1981, Title VII, and the Americans With Disabilities Act. *Id.* On December 12, 2022, the City of Tulsa filed a Motion for Summary Judgment as to all claims. [App. Vol. 1, p. A29-Vol. 3, p. A528] On January 23, 2023, Plaintiff filed a response to the summary judgment motion. [App. Vol. 3, p. A537 – Vol. 4, p. A748] Defendant filed a reply on February 1, 2023. [App. Vol. 4, p. A753-A768] The district court held a hearing on the summary judgment motion on February 3, 2023. [App. Vol. 4, p. A775-A849] On March 8, 2024, the trial court entered its 133-page Memorandum Opinion correctly granting summary judgment for the City on all claims. [App. Vol. 4, p. A850 – A982] That Order was followed by the Final Judgment entered March 28, 2024. [App. Vol. 4, p. A983] In October of 2023, the Plaintiff filed the present appeal. [App. Vol. 4, p. A773] On October 26, 2023, this Court entered an Order abating the appeal until the district court case reached it conclusion. [Doc. No. 010110941723] On March 21, 2024, this Court entered an Order lifting the abatement of the appeal in light of the district court's entry of its March 8, 2024, Memorandum Order disposing of all claims. [Doc. No. 010111019868]

# SUMMARY OF THE ARGUMENT

The district court correctly granted City of Tulsa's Motion for Summary Judgment as to all claims. While the district court found that Ms. Bell was able to establish a prima facie case of discrimination, it also found that the City presented legitimate, nondiscriminatory reasons which the Plaintiff had no evidence were pretextual. The district court's finding is supported by the undisputed facts in this case that Ms. Bell was repeatedly insubordinate to her supervisors, failed to cooperate with the Human Resources department, and repeatedly violated the City's respectful workplace policy. Ms. Bell was given progressive discipline and clearly established expectations by her supervisors in an effort to try to preserve the relationship and keep Ms. Bell as a City of Tulsa employee, but ultimately, Ms. Bell's actions in violating City policies led to the termination of her employment.

Similarly, the district court correctly found that the Plaintiff was not retaliated against for engaging in protected opposition to discrimination. As with the discrimination claims, the district court found that Ms. Bell presented a prima facie case of retaliation with respect to her termination, but failed to show that the City's legitimate, non-discriminatory reasons for her termination were pretextual in a manner that would undermine the decision to terminate her employment.

Lastly, the district court evaluated Plaintiff's claim that she suffered an adverse employment action because of her son's disability. The City properly

17

presented this claim for summary judgment to the district court and after briefing, and oral argument, the court found that, as with the other claims, the Plaintiff failed to assert any evidence that the City's reason for the actions it took against her were in any way pretext for a discriminatory motive related to her child's disability.

For the reasons set forth herein, the Memorandum Order of the District Court should be affirmed.

## ARGUMENT AND AUTHORITIES

### I.    The District Court Correctly Found That Plaintiff Could Not Establish Pretext On Her Disparate Treatment Claims.

Ms. Bell urges this Court to find on appeal that the district court improperly granted summary judgment to the City on her race discrimination claims based on her allegations there is a material fact in dispute. [Appellant Opening Brief, p. 20] The undisputed facts in the records support the district court's finding.

The Plaintiff alleges in this lawsuit disparate treatment claims under both Title VII and 42 U.S.C. §1981. The Courts have consistently analyzed both under the framework set forth in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973).

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

18

"The framework for analyzing claims under Title VII is well established." *E.E.O.C. v. Flasher Co., Inc*., 986 F.2d 1312 (10th Cir. 1992). This Circuit has adopted the burden-shifting format set out in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). This three-step analysis first requires the plaintiff to prove a prima facie case of discrimination. *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145–46 (10th Cir. 2008). If the plaintiff establishes a prima facie case, the burden of going forward shifts to the defendant to produce a legitimate, nondiscriminatory reason for its actions. *Id*. "If the defendant does so, the plaintiff must either show that his race, age, gender, or other illegal consideration was a determinative factor in the defendant's employment decision or show that the defendant's explanation for its action was merely pretext." *Id*. "Mere conjecture that the employer's explanation is pretext, however, is insufficient—as a matter of law—to show pretext." *Zisumbo v. Ogden Reg'l Med. Ctr*., 801 F.3d 1185, 1200 (10th Cir. 2015).

"While *McDonnell Douglas* involved a Title VII claim for failure to hire, the analytical framework it pioneered applies equally to claims brought pursuant to section 1981." *Kendrick v. Penske Transp. Servs., Inc*., 220 F.3d 1220, 1225–26 (10th Cir. 2000) *citing Perry v. Woodward*, 199 F.3d 1126, 1135 (10th Cir. 1999); *see also Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004).

While the City argued at the summary judgment stage (and still maintains) that the Plaintiff has not been able to establish a prima facie case under this burden shifting framework, the district court found Plaintiff was able to establish a prima facie case but could not establish any pretext for the City's decision. Since the issue of lack of pretext is dispositive of this matter, the City will focus its arguments on appeal on that element.

The district court correctly found that the City articulated a legitimate, non-discriminatory reason for Ms. Bell's discipline and termination. [App. Vol. 4, p. A943]. The court noted that "'[T]his stage of the analysis only requires the defendant to articulate a reason for the discipline that is not, on its face, prohibited' and that is 'reasonably specific and clear.'" App. Vol. 4, p. A943, quoting *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1058 (10th Cir. 2020) (*quoting E.E.O.C. v. Flasher Co*., 986 F.2d 1312, 1316 n.4 (10th Cir. 1992)). "Poor performance is 'the quintessential legitimate, nondiscriminatory reason for termination.'" *Brainerd v. Schlumberger Tech. Corp*., 589 F. App'x at 412 (quoting *Bertsch v. Overstock.com*, 684 F.3d 1023, 1029 (10th Cir. 2012), abrogated on other grounds by *Lincoln v. BNSF Ry. Co*., 900 F.3d 1166 (10th Cir. 2018)). The district court identified that under this Court's precedence, issues such as attendance problems, policy violations, and "attitude issues" are considered legitimate and nondiscriminatory reasons for

20

taking adverse employment actions. App. Vol. 4, p. A943, quoting *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d at 1058.

On summary judgment the Plaintiff did not dispute that the City identified a legitimate, nondiscriminatory reason and, after review of the undisputed evidence, the district court correctly concluded the City had met its burden on that element. [App. Vol. 4, p. A943]

Ultimately, the district court's deciding factor for dismissing Plaintiff's disparate treatment claims came down to her failure to identify any evidence which would establish pretext. Once the City has established a legitimate reason for the termination, "the burden thus shifts back to Plaintiff to establish a genuine issue of material fact that these reasons were pretextual." *Sprague v. Thorn Ams., Inc*., 129 F.3d 1355, 1363 (10th Cir. 1997). "In so doing, Plaintiff must show that [the City's] 'proffered non-discriminatory explanations for its actions are so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [they are] unworthy of belief.'" *Id*. at 1201 (alteration in original). Pretext may also be shown by establishing that he or she "was treated differently from other similarly-situated, nonprotected employees." *Cooper v. Wal-Mart Stores, Inc*., 296 F. App'x 686, 693 (10th Cir. 2008).

"Mere conjecture that the employer's explanation is pretext is insufficient basis to defeat summary judgment." *Jencks v. Modern Woodmen of Am*., 479 F.3d

1261, 1267 (10th Cir. 2007) citing *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).

The district court thoroughly addressed Ms. Bell's three (3) arguments regarding pretext and found them to be insufficient to overcome the City's request for summary judgment. Plaintiff's pretext arguments are: (1) that her co-workers and supervisors lacked credibility and leveled false accusations against her; (2) that the City "padded" her disciplinary file to justify termination; and (3) there was differential treatment of "similarly situated" employees. [App. Vol. 4, p. A945]

### A.    Plaintiff Cannot Create A Fact Issue By Disputing Credibility

Plaintiff's initial argument is that the allegations made by her co-workers and supervisors come down to issues of credibility which create a material fact sufficient to preclude summary judgment. The primary case upon which Plaintiff relies on appeal is the unpublished Second Circuit case of *Boutsis v. Home Depot*, 371 Fed.Appx. 142 (2nd Cir. March 29, 2010)(unpublished).  In that case, the trial court granted summary judgment on a claim of negligence related to an accident that occurred in the Home Depot store. The Second Circuit on appeal held that the issue of whether the store had maintained a warning for customers to seek assistance before moving heavy boxes. *Id*. The evidence in that case was solely testimony from each side regarding such a policy or practice. Such is not the case here.

As the district court correctly found the "City of Tulsa has presented meticulous evidence detailing the interactions surrounding S. Bell's FMLA request." [App. Vol. 4, p. A947] The basis for Ms. Bell's termination does not rely on a "he said, she said" type of evidence. The telephone call that resulted in Ms. Bell's termination was recorded, transcribed, and was in the record on summary judgment for review by the trial court. [App. Vol. 3, p. A487 and p. A528 (audio recording); Vol. 3, p. A489 (transcript of call)]

On appeal, Plaintiff cherry picks part of the record and contends that various statements or contentions are matters of credibility which create a disputed fact requiring trial. However, as the district court noted, a fact is "material" if it "might affect the outcome of the suit under governing law." *Liberty Lobby, Inc.*, 477 U.S. at 248; [App. Vol. 4, p. A922-923]. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby, Inc.*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Liberty Lobby, Inc.*, 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. at 586-587 (footnote omitted).

Plaintiff cannot avoid summary judgment by alleging a credibility dispute, as the basis for the City's termination is clear in the recording of the call.

The district court appropriately found that "S. Bell has not identified any weaknesses or inconsistencies that leads the Court to conclude that the City of Tulsa's proffered rationales are 'unworthy of credence.'" [App. Vol. 4, p. A947]

### B.    Ms. Bell's Claims That Her Discipline Was "Padded" Are Unsupported By The Record

Ms. Bell claims in her appeal, as she did before the district court, that the fact that she had good performance reviews before she filed a grievance over the decision denying her telework is evidence that the discipline she received was motived by some retaliatory animus. Initially, the City notes that this argument seems to go more towards Ms. Bell's retaliation claim than her disparate treatment claim, but either way, there is no merit to this contention. The affidavits by Ms. Bell's supervisor and department head both note that they noticed a change in her behavior after her telework request was denied. Simply because she had good performance reviews at one point does not make the City's reasons for discipline unworthy of belief. The district court found that the "evidence demonstrates that the City of Tulsa 'honestly believed' the reasons for which S. Bell was punished 'and acted in good faith upon those beliefs.'" App. Vol. 4, p. A948, quoting *Swackhammer v.Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1170 (10th Cir. 2007)(quoting *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, at 924-25 (10th Cir. 2004))("'In determining whether the proffered reason for a decision was pretextual, we examine the facts as they appear to the

person making the decision.'" (quoting *Watts v. Norman*, 270 F.3d 1288, 1295 (10th Cir. 2001))).

The district court further found that "the record establishes that S. Bell's attendance issues, violations of City of Tulsa policy, and attitude issues after the denial of her telework request led to her discipline and ultimate termination; the fact that the disciplinary actions taken against her followed the grievances she filed is insufficient to raise a genuine issue of material fact as to pretext." [App. Vol. 4, p. A948]. This is clearly established in the record on appeal.

For example, it is undisputed that Ms. Bell did not attend the October 4, 2019, meeting with her department head, Mr. Dellinger. [App. Vol. 1, p. A88] Instead, she clocked out at 3:38pm for the day instead of her normal ending time of 5:30pm. [App. Vol. 1, p. A98-99, ¶17; Vol. 1, p. A118 ¶15; Vol. 2, p. A354]. It is also undisputed that on October 17, 2019, Mr. Berg told Ms. Bell she needed to clock out for the day and go home since she had worked an extra two (2) hours the day before. [App. Vol. 1, p. A99, ¶21; Vol. 2, p. A359; Vol. 1, p. A90-A91] Ms. Bell did not clock out. [App. Vol. 1, p. A99-A100, ¶¶21-22] Even after Mr. Berg returned to his office and sent an email to Ms. Bell directing her as her supervisor to punch out immediately and leave work for the day, Ms. Bell continued to refuse to leave. [App. Vol. 1, p. A99-A100, ¶¶21-22; Vol. 2, p. A359] Instead, she worked until 5:30 p.m. and left before City security arrived. *Id*. This is undisputed evidence in the record of

Ms. Bell's lack of respect for authority and insubordination which was the basis for her discipline.

Further, as the district court found, the department's decision not to move her to another supervisor is not evidence of pretext. The district court found it may have been "unwise" but does not "'draw into question whether [the City of Tulsa] actually relied, honestly and in good faith' on its proffered reasons for terminating S. Bell." App. Vol. 4, p. A949, quoting, *Swackhammer v. Sprint/United Mgmt. Co*., 493 F.3d at 1170.

### C. Ms. Bell's Argument That She Was Treated Differently From "Similarly Situated" Employees Is Not Supported By The Evidence

Lastly, Ms. Bell's argument that she was treated differently than similarly situated employees, fails in light of the clear evidence in this case. As the district court noted, "A plaintiff may . . . show pretext . . . by providing evidence that he was treated differently from other similarly situated, nonprotected employees who violated work rules of comparable seriousness." App. Vol. 4, p. A949 quoting *Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d at 1230. "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Aramburu v. Boeing Co*., 112 F.3d 1398, 1404 (10th Cir. 1997) quoting *Wilson v. Utica Park Clinic, Inc*., No. 95–5060, 76 F.3d 394, 1996 WL 50462 (10th Cir. Feb.7, 1996) (unpublished) (citing *Mazzella v. RCA Global Communications, Inc*., 642 F.Supp. 1531, 1547

(S.D.N.Y.1986), aff'd, 814 F.2d 653 (2d Cir.1987)). In addition, "employees who are similarly situated must have been disciplined for conduct of comparable seriousness." *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006).

In this case the Plaintiff has failed to identify any similarly situated comparator employees related to her adverse employment actions. Plaintiff claims that two white employees were allowed to telework while she was not. Initially, denial of the ability to work remotely was an adverse employment action. See *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 885 (S.D. Tex. 2010) ("Nearly all of Plaintiff's claims, even if taken as true, fail to constitute adverse employment decisions: denial of telecommuting agreement, denial of use of an entrance door, close monitoring by her supervisor, changes in her drafts of engagement letters, delayed award, assignment to a small office, denial of a larger and better located office, and denial of work requests.")

However, even if denial of telework was an adverse employment action, it is undisputed that the two employees identified by Ms. Bell are not similarly situated. Jan Buster and Paula Stickelber are both City of Tulsa employees in the larger Information Technologies (IT) department. Ms. Stickelber's direct supervisor was Glen Breske, IT Manager – Operations. [App. Vol. 1, p. A117, ¶10] It is admitted Ms. Stickelber did not report to Mr. Berg. [App. Vol. 1, p. A71]

Ms. Buster was a Systems Business Analyst and reported directly to Mark Temple, the Development Services Manager. [App. Vol. 1, p. A117, ¶11]

The City's policies clearly establish the right to work remotely is up to the employee's direct supervisor. In this case, the Plaintiff admitted in her deposition she is not aware of anyone under Chris Berg's supervision who was allowed to telecommute when she was not. [App. Vol. 1, p. A75 – A78] It is undisputed that the Plaintiff's two comparator employees were not under the same supervision and didn't have the same job duties. Thus, they were not similarly situated employees.

The Plaintiff has also not identified any similarly situated employees who engaged in similar conduct as her but received lesser or no discipline. "[T]o determine whether employees are similarly situated, we evaluate 'whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.'" *Stinson v. Pub. Serv. Tel. Co*., 486 Fed. Appx. 8, 10 (11th Cir. 2012) quoting *Burke–Fowler v. Orange Cnty*., 447 F.3d 1319, 1323 (11th Cir.2006) (per curiam). "The comparator's misconduct must be 'nearly identical.'" *Id*. Plaintiff has not identified anyone who also blatantly refused the instructions of their supervisors or made repeated false allegations but were not similarly disciplined.

This is a fatal flaw in Plaintiff's case. The Plaintiff contends that during the argument over the bathroom white co-worker Summer Caughron called her "crazy"

and wasn't disciplined while Ms. Bell was. However, the evidence is clear that Ms. Bell's initial discipline had nothing to do with what was said during the argument with Ms. Caughron. [App. Vol. 2, p. A307] Instead Ms. Bell was disciplined for blatantly ignoring supervisor's orders, failing to cooperate with HR and making false statements in an email. Plaintiff has no evidence that anyone else, including Ms. Caughron, engaged in the same actions and escaped discipline.

The district court correctly granted summary judgment to the City on Ms. Bell's discrimination claims.

## II.    Plaintiff's Retaliation Claims Were Properly Dismissed

With respect to Ms. Bell's retaliation claims, the district court correctly found that Ms. Bell presented a prima facie case for retaliation regarding her termination but not her two suspensions. The district court notes that 100 days passed between the time Ms. Bell filed her complaint regarding the bathroom incident and her five-day suspension which is outside what this court has held is sufficient temporal proximity to establish a prima facie case for retaliation. [App. Vol. 4, p. A955]; See *Bekkem v. Wilkie*, 915 F.3d 1258, 1271 (10th Cir. 2019)("[W]here a gap of three months or longer has occurred, a plaintiff must present other evidence -- 'more than mere speculation, conjecture, or surmise' -- to establish that [his] protected activity was a but-for cause of the adverse employment action."). The Court further correctly noted that "the record contains no additional evidence apart from temporal proximity

which might establish causation as to S. Bell's five-day suspension supports the Court's conclusion." [App. Vol. 4, p. A956] Thus, the Plaintiff did not meet her burden to establish a prima facie case of retaliation for her 5-day suspension.

Similarly, the district court noted that the time between Ms. Bell's complaint and her 10-day suspension is 369 days, which is again, well outside the temporal proximity recognized by this Court as sufficient to establish a prima facie case. [App. Vol. 4, p. A956-957] Therefore, Ms. Bell did not establish a prima facie case of retaliation related to her 10-day suspension.

The only disciplinary action within this time frame is Ms. Bell's termination which the district court notes was 52 days after Ms. Bell complained via email about HR employee, Joyce Powell.  [App. Vol. 4, p. A957]

The district court then reiterated that the City presented a legitimate non-discriminatory reason for its action. Thus, as with the previous claims, the retaliation claim related to the termination of Ms. Bell's employment came down to whether the Plaintiff presented any evidence to establish pre-text. Ms. Bell claims on appeal that she has established a prima facie case that her disciplinary actions were retaliatory. While the City disagrees and believes the record supports the district court's findings that there is no temporal proximity which would raise an inference of retaliation for those disciplines, even if this Court were to find otherwise, such

claims fail because the Plaintiff cannot establish any pre-text for the City's proffered reasons for discipline.

To survive summary judgment, "an employee must proffer evidence that shows each of the employer's justifications are pretextual." *Tyler v. RE/MAX Mountain States, Inc*., 232 F.3d 808, 814 (10th Cir. 2000).

The district court summarized the City's reasons for terminating Ms. Bell as follows: "(i) the fact that S. Bell continued to exhibit 'unprofessional, disrespectful, and condescending behavior' despite that S. Bell had received two previous suspensions and directions to change her behavior; (ii) S. Bell's behavior during the September 25, 2019, telephone call with Powell and McIntosh; (iii) the uncooperative nature of the email S. Bell sent on October 12, 2020, and the false accusation included therein that Powell violated S. Bell's HIPPA rights."

## A.    Plaintiff Failed To Establish That The City's First Reason Was Pretextual

The record is replete with factual support for the City's first reason for terminating Ms. Bell's employment – her continued unprofessional, disrespectful, and condescending behavior.  Before terminating her employment, the City provided Ms. Bell with two separate suspensions for continued, documented insubordinate actions and disrespectful behavior. She was also twice given written letters documenting her supervisor's expectations of her including the requirement that she not be "insubordinate and improve your attitude and work relationships with me and

31

your co-workers." [App. Vol. 2, p. A427] Despite the hearing officer's recommendation that Ms. Bell's employment be terminated the second time, Mr. Dellinger decided to try one more time to repair the work relationship with Ms. Bell and gave her a 10-day suspension instead. A review of the call between Ms. Powell and Ms. Bell in October of 2019, which led to the termination hearing, makes clear that despite repeated warnings and opportunities to change her behavior, Ms. Bell continued her rude and disrespectful attitude toward City staff.

The district court noted that this Court has affirmed summary judgment on a retaliation claim under similar facts in *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189 (10th Cir. 2011). This Court held that "ADT justified termination of Mr. Crowe based on his entire personnel file, particularly his long history of alleged sexual harassment and insubordination." 649 F.3d at 1198. Such is the case here. Ms. Bell's termination was justified based on her long history of insubordination and disrespectful behavior to others and the Plaintiff has pointed to no evidence which would establish pretext.

**B.    Plaintiff Failed To Establish That The City's Second Reason Was Pretextual**

The district court also correctly determined that Ms. Bell's behavior during the September 25, 2019, telephone call with Powell and McIntosh was a legitimate reason for her termination and no evidence of pretext was provided. The telephone call between Ms. Bell and Ms. Powell is included in the record and makes clear that

32

Ms. Bell was rude, disrespectful and refused to answer questions to assist HR in processing her leave claims. Ms. Bell provided no evidence that the City's reasons for her termination are pretextual and the district court properly concluded Ms. Bell's conduct on that call supported her termination.

### C.  Even If Plaintiff Could Establish Pretextual Reasons Related To The City's Third Reason, It Is Insufficient To Overcome Summary Judgment.

While the City disagrees with the district court's conclusion that the City's third rationale for firing Ms. Bell, could, in the light most favorable to Ms. Bell, establish pretext, the Court properly concluded that the other two reasons sufficiently justified the termination for non-discriminatory reasons.

"Debunking one of the employer's explanations defeats the case for summary judgment 'only if the company has offered no other reason that, if that reason stood alone (more precisely if it did not have support from the tainted reason), would have caused the company to take the action of which the plaintiff is complaining.'" *Jaramillo v. Colorado Jud. Dep't*, 427 F.3d at 1310 (quoting *Russell v. Acme-Evans Co.*, 51 F.3d 64, 69 (7th Cir. 1995)). As the district court found, the record in this case makes clear that Ms. Bell continued to act rudely, disrespectfully, and unprofessionally and that her behavior on the September 25, 2020, telephone call independently would have caused the City of Tulsa to terminate her employment. [App. Vol. 4, p. A969]

33

The district court correctly concluded as follows [App. Vol. 4, p. A973]:

> Although S. Bell does not, at the summary judgment stage, have a burden to establish conclusively whether the City of Tulsa's reasons for suspending and terminating her were pretextual, she is required to establish a genuine factual dispute "that a retaliatory motive was the 'but for' cause" of her termination." *Rodriguez v. Brown*, No. 21-1124, 2022 WL 3453401, at *15 (10th Cir. Aug. 18, 2022)(no citation given for quotation). S. Bell has not carried her burden of demonstrating that each of the City of Tulsa's proffered, non-retaliatory motivations for terminating her were pretextual, nor that the pretextual nature of the City of Tulsa's third reason for her termination renders the City of Tulsa's other reasons sufficiently uncredible. Rather, the City of Tulsa's justifications remained consistent, and the record shows that the City of Tulsa provided S. Bell with multiple warnings and opportunities to change her behavior throughout her employment; there is no evidence that the City of Tulsa's overall rationale is false, incoherent, or contradictory. See *Morgan v. Hilti, Inc.*, 108 F.3d at 1323. Accordingly, because the reasons for S. Bell's termination are not so unworthy of belief so as to be pretextual, the Court concludes that the City of Tulsa is entitled to judgment as a matter of law on S. Bell's retaliation claims under Title VII or the ADA.

Summary judgment for the City on Plaintiff's retaliation claims should be affirmed.

## III. The City Properly Raised A Challenge To Plaintiff's Disability Claims In Its Summary Judgment Motion

The Plaintiff's Complaint asserts six claims for relief. Claim number five is listed under the heading "FIFTH CLAIM: ADA Disability Association Discrimination". [App. Vol. 1, p. A15.] There are only two statements under this cause of action in the Complaint. The first just incorporates by reference all previous statements in the Complaint. Then the only other paragraph states [App. Vol. 1, p. A15]:

Bell's child suffers significant challenges that make him an individual the ADA intends to protect. Bell's association with her child with challenges was used as a justification to deny a work-from-home schedule request.

Plaintiff's Complaint clearly makes <u>only</u> the allegation that the City refused to allow Ms. Bell the right to work from home because of her son's disability. The City specifically addressed **<u>this sole allegation</u>** in its motion for summary judgment citing *Den Hartog v. Wasatch Acad.,* 129 F.3d 1076, 1084 (10th Cir. 1997) which states "the ADA states that no covered employer 'shall discriminate against a qualified individual with a disability because of the disability of such individual ....'" [App. Vol. 1, p. A56] "In the context of this general prohibition, the word 'discriminate' is a term of art which includes 'not making reasonable accommodations.'" *Id*. One of the elements of disability association discrimination is that the plaintiff suffered an adverse employment action. *Trujillo v. PacifiCorp*, 524 F.3d at 1155. Since, as set forth above, the right to work from home is not an adverse employment action, it was a reasonable evaluation of Plaintiff's Complaint that her claim in her fifth cause of action related to the failure to accommodate her, is not a broader discrimination claim.

In her response to Defendant's MSJ, Plaintiff argued for the first time that the termination of her employment was motived by discrimination because of her association with her disabled son. [App. Vol. 3, p. A583] Importantly, at no point in her response did the Plaintiff argue that the Defendant's MSJ waived such a claim.

35

On reply, the City addressed this new allegation initially contending that it was not properly pled, but then arguing that even if "disability association" was properly pled, the evidence provides no support for any claim that Ms. Bell's termination was in any way caused by any discriminatory animus regarding her son's disabled status. [App. Vol. 4, p. A753]

Plaintiff then raised <u>for the first time at the hearing</u> on this matter her argument that the City waived this claim by not raising it in summary judgment. The City responded to the waiver argument citing the Plaintiff's Complaint and then the district court heard argument from both the City and the Plaintiff on the merits of an ADA disability discrimination claim in this case under the burden shifting analysis set forth in *Trujillo, supra.* [App. Vol. 4, p. A826 – A832 (argument made at the MSJ hearing)]

In its Memorandum Opinion the district court noted that the Plaintiff identifies the claim as one for "disability association" but notes "the Complaint is somewhat ambiguous as to the nature of S. Bell's ADA claim". [App. Vol. 4, p. A973] However, the court determined that even if Ms. Bell's claim "shifted" between her Complaint and her MSJ response, the court considered it as a request to amend the Complaint and thus considered the merits of the claim. *Id*. Plaintiff raised for the first time in her response to the MSJ, the argument that the termination of her

employment was motivated by her son's disability, thus, the City's response in its reply brief and at oral argument are appropriate and do not result in waiver.

Under Plaintiff's theory, her argument regarding waiver was not properly presented to the district court as Plaintiff never raised the waiver argument in her response to Defendant's motion. Instead, it is raised for the first time at the oral argument in this matter. See *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1235 (10th Cir. 2009)("An argument made for the first time at oral argument, however, will not be considered.") citing *Fed. Ins. Co. v. Tri–State Ins. Co.*, 157 F.3d 800, 805 (10th Cir.1998) ("Issues raised for the first time at oral argument are considered waived.").

However, in deciding whether an issue was waived for purposes of the appeal, this Court has looked to the whole record, including reply briefs and oral arguments to determine if the issue was presented to the trial court. See *York v. City of Las Cruces*, 523 F.3d 1205, 1212-1213 (10th Cir. 2008). The issue raised to the district court in this case is similar to that addressed in *Otten v. BNSF Ry. Co.*, 22-8025, 2023 WL 1948626, at *4 (10th Cir. Feb. 13, 2023).  In that case Mr. Otten, on appeal, argued that the district court erred when it considered argument raised for the first time in the reply briefs of BNSF and Union Pacific. The railroads responded that they raised the issue in their initial brief, but then on reply responded to the additional claims and authority raised by Mr. Otten in response. *Id*. at *4.

This court found that "[a] moving party, however, does not introduce new arguments for summary judgment in its reply merely by responding to arguments in the nonmoving party's brief and 'point[ing] out the defects' in those arguments." *Id*. citing *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005); *see also In re Gold Res. Sec. Litig*., 776 F.3d 1103, 1119 (10th Cir. 2015) ("While it is true that we generally do not review issues raised for the first time in a reply brief, we make an exception when the new issue argued in the reply brief is offered in response to an argument raised in the plaintiff's brief." (internal quotation marks and brackets omitted)).

Such is the case here. The City addressed the Plaintiff's disability claim in its motion based on the way it was presented in the Complaint.  In response, the Plaintiff did not argue waiver, but instead introduced case law that she claimed supported her claim. In reply and in oral argument, the City addressed Plaintiff's allegations and case law presented in response.

While Plaintiff contends in her appellate brief that the standard of review for this contention is *de novo*, in the *Otten* case, this Court made clear it reviews claims that "a district court violated the implicit guarantee of Rule 56 by relying on an argument raised by the moving party for the first time in its reply brief for an abuse of discretion." *Id*. at *4 citing *Beaird v. Seagate Technology, Inc*., 145 F.3d 1159, 1164 (10th Cir. 1998). "Under the abuse of discretion standard, a trial court's decision

will not be disturbed unless we have a definite and firm conviction that the lower court has made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Otten, supra, at 4.* (internal quotation marks and brackets omitted). This court discussed that the purpose of this rule is the unfairness created by the moving party being able to present a new argument on reply that does not allow the non-moving party an opportunity to respond.

In this case, Ms. Bell clearly had several opportunities to respond to the argument she now alleges was newly presented on reply. Initially, any argument raised by the City on reply was in response to the case law and argument cited by Ms. Bell in response. Then, the district court held a summary judgment hearing and allowed argument on this issue from both sides. There is no evidence to suggest that the district court abused its discretion in deciding the merits of the disability association argument rather than considering it waived.

Lastly, to the extent the Plaintiff in Proposition I of her appeal brief argues that her ADA retaliation claim was not properly presented by the City in its initial motion, this is clearly contradicted by the record. The City's Motion For Summary Judgment found in the record in App. Vol. 1, p. A57, clearly argues that "similarly, her ADA retaliation claim fails as a matter of law." The City then goes on to cite and address relevant the case law and the evidence in the record which supports a finding of summary judgment for the City on the Plaintiff's ADA retaliation claim.

### IV.    The District Court Did Not Err In Granting Summary Judgment On Plaintiff's Disability Association Claim

As set forth above, the district court did assess in its Memorandum Opinion the merits of Plaintiff's claim of disability discrimination, and correctly found that there was no evidence in the record to support such a claim.

The district court noted that the evaluation of a disability association claim under the ADA is the same as for other discrimination claims under the *McDonnell Douglas* framework. *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 969 n.18 (10th Cir. 2017)("We clarify -- as we did in *Den Hartog* -- that the burden shifting scheme of *McDonnell Douglas* applies to ADA association discrimination claims.").

As with Ms. Bell's other claims the district court found that the Plaintiff made a prima facie case and that the City has proffered legitimate, non-discriminatory reasons for its actions. Thus, the analysis again fell to whether the Plaintiff could establish any evidence of pre-text.

The court noted that this Court has identified two ways in which an inference may arise sufficient to establish pretext: "distraction" and "expense." *Trujillo v. PacifiCorp*, 524 F.3d at 1155 (*quoting Larimer v. Int'l Bus. Machs. Corp.*, 370 F.3d 698, 700 (7th Cir. 2004)). Through this context the district court considered Ms. Bell's three arguments that her discipline and/or termination were caused by discriminatory animus related to her son's disability.

Initially, Plaintiff argued that the temporal proximity between the termination of her employment and the call with HR regarding her request for leave is sufficient to create an inference of pretext. However, this Court's case law establishes that temporal proximity alone is sufficient to establish a prima facie case, but alone will not support a finding of pretext. *See Trujillo v. PacifiCorp*, 524 F.3d at 1157 & n.5 ("Our reference to these cases is not intended to suggest that an association discrimination plaintiff can establish the fourth prong of the prima facie case by showing temporal proximity alone.").

Next, the Plaintiff alleged that her conversation between Ms. Powell and Ms. McIntosh in HR regarding her leave was all part of a "conspiracy" against her. However, the record doesn't support this allegation. Ms. Powell and Ms. McIntosh contacted Ms. Bell to try to make sure her leave was being properly coded.  It is part of their role as Human Resources employees to ensure that leave is being used and coded correctly.

On appeal Ms. Bell argues that during the September 25 call between Ms. Bell, Ms. Powell and Ms. McIntosh, "Powell accused Appellant of not needing the relief, and suggest that 'she' [Powell] was aware that Appellant's son was a ***level 3 Autistic***, and could personally appear at school." Appellant's opening brief, p. 26. However, this is a continued and blatant misrepresentation of the record. The call between Ms. Powell and Ms. Bell was recorded and both the transcript and the call are in the

41

record. No where in that call is there any statement by Ms. Powell that she knew Ms. Bell's son was at a certain level of autism. [App. Vol. 3, p. A489] The call is in the record and speaks for itself. [App. Vol. 3, p. A489; p. A528] Plaintiff tries on appeal to create a fact question by misstating the record in her favor; however, the district court reviewed the actual evidence in this case, and correctly found that there is no evidence of discrimination under any theory.

As the district court correctly found, HR asking questions of Ms. Bell related to her leave without more does not give rise to an inference of discriminatory motive. The district court further reviewed the Plaintiff's allegations regarding her health insurance being "cancelled" and found no discriminatory motive there in light of the actual evidence.

The district court found "while S. Bell's insurance was terminated at the end of 2019, S. Bell adduces no evidence indicating her insurance was terminated as a result of the expense of J. Bell's care." App. Vol. 4, p. A978 citing *Lester v. City of Lafayette*, No. 13-CV-01997, 2015 WL 881677, at *3-4 (D. Colo. February 27, 2015)(Arguello, J.)("Ms. Lester has presented no evidence that the City was tracking the cost of her and her daughter's health care or that her daughter's care was unusually or particularly expensive."). Additionally, the evidence in the record on summary judgment is that thirty-two additional employees had their insurance cancelled when Ms. Bell's was because of the same error. The City of Tulsa

42

acknowledged the issue, reinstated and backdated Ms. Bell's insurance coverage so there was no lapse of coverage.

Ms. Bell also argues on appeal, as she did before the district court, that notice of a pre-termination hearing is sufficient to rise to the level of an adverse employment action. However, as the district court noted, "the mere notice of a hearing to determine whether an adverse employment action should be taken, however, is not 'harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" App. Vol. 4, p. A976, quoting *Payan v. United Parcel Serv*., 905 F.3d 1162, 1172 (10th Cir. 2018) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. at 57). Bell relies upon *Haynes v. Level 3 Communications, LLC*, 456 F3d. 1215 (10th Cir. 2006) to support this argument; however, *Haynes* states "a written warning may be an adverse employment action only if it effects a significant change in the plaintiff's employment status." *Id*. at 1224. In this case, Plaintiff received notice of a due process hearing wherein she could present her response to allegations that she violated City policies and work rules. This is not the type of "warning" discussed in *Haynes* and does not constitute an adverse employment action.

Lastly, the district court considered Ms. Bell's argument that she was terminated for the time she missed work to care for her disabled son. Under the ADA an employer cannot "make an adverse employment decision based on the 'belie[f] that

the [employee] would have to miss work' in order to care for a disabled person." *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 760 (5th Cir. 1996)(internal quotations omitted). However, the record is clear in this case that Ms. Bell was disciplined not because she was missing work to care for her child, but instead because she failed to follow the rules and procedures established by the City for taking such leave and working a flex schedule. The district court noted that "where S. Bell requested ahead of time to flex her time and adjust her work schedule to care for J. Bell, she almost always was allowed to do so." [App. Vol. 4, p. A979; see Vol. 2, p. A393 (flex time approvals)]

The undisputed evidence presented in the record on summary judgment establishes that Ms. Bell was disciplined for her failure to follow the policies and procedures of the City and not for any discriminatory motive related to her son's disability. The district court notes that case of *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 488 (6th Cir. 2011) wherein the Court found that "the record is replete with evidence that Stansberry was not performing his job to Air Wisconsin's satisfaction and devoid of evidence to suggest that his discharge was based on any unfounded fears that his wife's illness might cause him to be inattentive or distracted . . . ."). Such is the case here.

The district court properly granted judgment in the City's favor on Plaintiff's disability association claim.

44

## **CONCLUSION**

For the reasons fully set forth above, the District Court did not err in granting the City of Tulsa's Motion for Summary Judgment. Accordingly, the City of Tulsa respectfully requests this Court to affirm the District Court's Order.

**RESPECTFULLY SUBMITTED**,

JACK C. BLAIR
City Attorney

/s/ Kristina L. Gray
KRISTINA L. GRAY, OBA #21685
Litigation Division Manager
T. Michelle McGrew, OBA #20279
Senior Assistant City Attorney
175 E. 2nd Street, Suite 685
Tulsa, Oklahoma 74103-3205
(918) 596-7717 (Telephone)
(918) 596-9700 (Facsimile)
lvaughn@cityoftulsa.org
kgray@cityoftulsa.org

45

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT</u>

1.      This document complies with the type-volume limitation of Fed. R. App. P. 32 (a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 11,151 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word version 14.0.7180.5002 (32-bit) in 14 point Times New Roman font.


Date: June 21, 2024


 Kristina L. Gray_____
KRISTINA L. GRAY, OBA #21685
Litigation Division Manager
T. Michelle McGrew, OBA #20279
Senior Assistant City Attorney
175 E. 2nd Street, Suite 685
Tulsa, Oklahoma 74103-3205
(918) 596-7717 (Telephone)
(918) 596-9700 (Facsimile)
lvaughn@cityoftulsa.org
kgray@cityoftulsa.org

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

(1)     all required privacy redactions have been made per 10th Cir. R. 25.5;

(2)     if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(3)     the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, Cisco Secure Endpoint version number 8.2.4.30130, last checked for security updates June 21, 2024 at 9:05 a.m., and according to the program are free of viruses.

Date: June 21, 2024

/s/ Kristina L. Gray
KRISTINA L. GRAY, OBA #21685
Litigation Division Manager
T. Michelle McGrew, OBA #20279
Senior Assistant City Attorney
175 E. 2nd Street, Suite 685
Tulsa, Oklahoma 74103-3205
(918) 596-7717 (Telephone)
(918) 596-9700 (Facsimile)
lvaughn@cityoftulsa.org
kgray@cityoftulsa.org
**ATTORNEYS FOR APPELLEE**
**CITY OF TULSA**

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 21, 2024, I electronically filed the foregoing using the court's CM/ECF system, which will send notification of such filing to the following:

Ms. Cynthia Rowe D'Antonio

Date: June 21, 2024

/s/ Kristina L. Gray
KRISTINA L. GRAY, OBA #21688
Litigation Division Manager
T. Michelle McGrew, OBA #20279
Senior Assistant City Attorney
175 E. 2nd Street, Suite 685
Tulsa, Oklahoma 74103-3205
(918) 596-7717 (Telephone)
(918) 596-9700 (Facsimile)
lvaughn@cityoftulsa.org
kgray@cityoftulsa.org
**ATTORNEYS FOR APPELLEE**
**CITY OF TULSA**